H. & T. C. R'y Co. v. W. S. Hook, Adm'r.

(Case No. 1541.)

1. STATUTES CONSTRUED.— Art. 1882, Revised Statutes, has no application to any matter which does not properly and strictly pertain to the estate of the decedent. Hence, any money which might be recovered from a railway company for the benefit of the parent of one who had been killed by its negligence, could in no event be paid to creditors or distributed generally to heirs under the statute of descents and distribution, and hence could form no part of the estate. This construction of the statute is not affected by the fact that the law confers power on the administrator or executor to prosecute the action, if suit be not brought within three months after the death of the deceased by the parties entitled to the benefit of the action.

2. DAMAGES.— See statement and opinion for facts under which a verdict for $2,000 damages, and judgment thereon, was affirmed.

APPEAL from Navarro. Tried below before the Hon. L. D. Bradley.

On the 6th day of September, 1880, W. L. Gilleland, a brakeman in the employ of the H. & T. C. R'y Co., was one of a crew — Jno. Good, conductor — who boarded and took charge of a freight train of appellant, at Corsicana, to run a trip from Corsicana to Denison and return, the northern division of appellant's line of railway, the train consisting of eighteen box and stock and lumber cars; Gilleland was braking on the front cars, and E. A. Clanton, the other brakeman, the rear cars. The train left Corsicana between six and seven o'clock in the evening. At Rice, a station ten miles north from Corsicana, the rear brakeman cut off a part of the train, and the balance of the train moved on beyond the north end of the switch for the purpose of backing on the side track, the brakeman Clanton operating the switch. After passing the switch, the en-

gineer signaled with whistle for brakes to be applied. Gilleland was seen, it being about eight o'clock and dark, to move to the brake on an M., K. & T. stock car, and his light — lantern — immediately disappeared. Clanton, the brakeman at the switch, at once signaled the engineer, and the train was stopped.

Gilleland was found about one hundred and fifty feet from the north end of the switch and some four or five feet west of the track with "one leg and arm mashed about off," by being run over by cars, from effect of which injury he died on 10th September, 1880.

On the 1st of June, 1881, W. S. Hook in vacation applied to the county judge of Navarro county for temporary letters of administration on the estate of W. L. Gilleland, deceased, which were on the same day granted, specially authorizing him " to employ counsel in and about the business of the estate, to demand, receipt, sue for and collect any and all liquidated and unliquidated claims due said estate, and to generally do and perform all acts necessary to the care and preservation of said estate."

Gilleland at the time of his death owed no debts, and had no property except exempt property, his clothes, and what the company owed him as wages for four trips. Hook administered on Gilleland's estate, under the advice of his attorneys, for the purpose of bringing this suit.

On the 28th of June, 1881, W. S. Hook filed his application for permanent letters of administration on the estate of Gilleland; at the July term following of the county court he was appointed permanent administrator of the estate and qualified as such on the —— day of ——, A. D. 1881. The appellee while temporary administrator, on the 22d of June, 1881, filed his original petition, instituting suit against the appellants for the sole use and benefit of Mary J. Gilleland, who was the surviving parent of Gilleland, deceased, seeking a recovery of damages on account of the death of her son W. L. Gilleland, alleged to have been occasioned by the negligence of appellants.

Defendant filed: 1. Plea in abatement, alleging, in substance, that on the 22d June, 1881 — date of filing of plaintiff's original petition,— plaintiff was only the temporary administrator, acting under special authority, and not empowered thereby to institute this suit. 2. General demurrer. 3. Special demurrer. 4. General denial. 5. Special pleas: of care on part of defendants; of contributory negligence. 6. Special plea of statute of limitations.

A trial was had which resulted in a verdict and judgment in favor of the plaintiff for the sum of $2,000.

The plaintiff alleged that Gilleland was a brakeman in defendant's employ; that he was stationed on a box-car next to a flat. That there was no chain on the brake-rod, of which Gilleland was ignorant. That at a signal from the engineer for brakes at Rice he attempted to apply the brake, and expecting to meet the usual resistance in turning the crank or brake-wheel, in consequence of there being no chain attached to the brake-rod, he was violently thrown from the car and run over by defendant's train, from which he received injuries which resulted in death. These were plaintiff's allegations of defendant's negligence.

Gilleland went aboard the train at Corsicana; he was killed at Rice, ten miles from Corsicana, about one hour after he went aboard the train. Corsicana was an inspecting point. It was not the duty of Gilleland to inspect the train before going aboard. There is no testimony that the brake was used on the trip before Gilleland attempted to use it at Rice. The testimony conflicts as to the necessity to use the brake before getting to Rice. Hanson says there was only one occasion to use brakes, which was at the water tank. All the witnesses agreed that the rear brakeman applies the brakes at the tank, but Clanton says front man sometimes assists. At Rice, Gilleland was ordered to apply the brakes for the purpose of stopping the train. He was seen to apply one brake, others were called for, and he was seen to go to the brake, set his lamp down, catch hold of the brake-wheel and then disappear. The train was stopped and Gilleland found a few feet from the track with his leg and arm mashed off, from which he died. The car from which he fell was inspected. Hanson says at Garrett, Clanton says at Dallas, and no brake-chain was on the braking machinery. The braking machinery was not complete and perfect without the chain; the brakes could not be applied without the chain. The car inspector gives special attention to brake-chains, and is very careful to see that all cars have chains, and to supply defects when discovered. There was no evidence that the car from which Gilleland fell, or the train on which he was working, was inspected at Corsicana. Philips says he has no recollection of ever having inspected either the car or the train, but says it is his duty to inspect all trains, and of course, he discharges his duty! Appellants proved by Quinland that Philips was a competent man, but failed to prove by Philips that Quinland was a competent man. If the chain were to brake while the brake is being applied there would be danger of falling. There was some evidence to the effect that brakes, even when not in order, might be handled in a particular manner so as to avoid danger. If there was

no chain on the brake it would be an open defect and easily discovered by the car inspector.

Gilleland had been working on railroads for about eight years. He had the reputation of being an excellent workman. He was shown to have been acting in a prudent and cautious manner when he attempted to set the fatal brake.

After defining contributory negligence the charge proceeded as follows: "If the party injured by his own carelessness contributed to the injury, or might by the exercise of ordinary care, such as prudent men generally would have used under similar circumstances, have avoided the injury, he cannot recover. The law required of Gilleland, as brakeman, for his own self-protection, the use of such ordinary care in the performance of the duties of his position as prudent men under similar circumstances would employ; and if the testimony shows that the defendant in the first instance was guilty of negligence in the want of the use of due care and reasonable diligence, as before stated, in having on said car a defective brake, by means of which the said Gilleland was thrown from the same in his attempt to use said brake, and thereby received said injuries; and if the testimony further shows that the said Gilleland, by his own ordinary negligence in not using such means and precautions as were proper and usual with prudent brakemen generally, under similar circumstances, thereby contributed to his own injury, so that the same would not have happened but for this mutual contributory or co-operative negligence of both, then the plaintiff would not be entitled to a verdict."

*Frost, Barry & Lee,* for appellants, cited: Wharton on Neg., § 421; Parrott v. Wells, 15 Wallace, 524; Centre v. Finney, 17 Barb., 94; Beazley v. Denson, 40 Tex., 428; Mims v. Mitchell, 1 Tex., 443.

*R. S. Neblett,* for appellee.

Stayton, Associate Justice.— The appellee qualified as temporary administrator of the estate of W. L. Gilleland on June 21, 1881, and on the next day brought this action for the benefit of the mother of Gilleland, to recover, under the statute, damages alleged to have accrued through injuries by him received through the negligence of the appellant, from which he died on September 10, 1880.

At the July term of the county court for Navarro county, the appellee was appointed administrator of the estate of the deceased,

and qualified. The order appointing the appellee temporary administrator empowered him " to employ counsel in and about the business of said estate, to demand, receipt, sue for and collect any and all liquidated and unliquidated demands due said estate, and generally to do and perform any and all acts necessary to the care and preservation of said estate."

After the appellee qualified as administrator he filed no pleading suggesting his appointment and qualification until December 17, 1881, at which time he filed an amended original petition. It is claimed that the appellee, as temporary administrator, had no power to institute this suit, and that the claim was barred at the time he filed the amended original petition.

If the damages to be recovered could be considered as a part of the estate of the deceased, the powers conferred by the order appointing the appellee temporary administrator were broad enough to authorize him to institute and maintain a suit upon any character of claim in which the estate might be interested; but we are of the opinion that art. 1882, R. S., has no application whatever to any matter which does not pertain properly and strictly to the estate of the decedent. The sum, which may result from an action such as this, could in no event become a part of the estate to be disbursed to creditors, or distributed among heirs under the general statutes of descent and distribution, and is therefore no part of the estate.

The statute under which this action is brought provides: " If the parties entitled to the benefit of the action shall fail to commence the same within three calendar months after the death of the deceased, it shall be the duty of the executor or administrator of the deceased to commence and prosecute the action, unless requested by all of the parties not to prosecute the same."

This statute, within itself, and without reference to the powers which an executor or administrator, regular or temporary, may have under the statutes regulating the administration of the estates of deceased persons, prescribes who may institute and maintain suits of this character. It is a special power conferred upon the person who may be executor or administrator, not because the matter pertains to the estate, but because the legislature deemed the persons who might be executors or administrators, more likely than others, to be proper persons to maintain suits to preserve and enforce the rights of the beneficiaries named in the act. The power might have been given to any officer of the county, without reference to whether they had any connection with the estate of the decedent or not, or might have been given to any other person.

The appellee, although he had not all of the powers of an administrator, was nevertheless an administrator when he brought the suit, and it did not abate when he ceased to be the temporary and became the regular administrator.

The suit was brought and prosecuted to final termination in the district court by the same person for the use and benefit of another named person, and we see no good reason to doubt the power of the appellee under the statute to institute and maintain the suit as administrator.

It has been held, under statutes similar to our own, that an administrator might be appointed for the purpose of bringing suit, although there was no property of the deceased within the state in which the letters were taken out. Hartford R. R. Co. v. Andrews, 36 Conn., 213.

In this case it is not necessary to inquire whether the institution of a suit of this character, by an unauthorized person, for the use of another, could be sustained, or whether such suit would suspend the running of the statutes of limitation.

The charge of the court, in the particulars pointed out in the assignments of error and in brief of counsel, if we look only to the designated clauses of the charge, might be held erroneous; but looking to other parts of the charge, and taking the charge altogether, we are of the opinion that the jury could not have been misled in reference to the matters complained of.

A charge cannot be considered in detached portions, for in the very nature of things it is impossible in a single sentence to clearly convey to the mind of a jury the principles of law applicable to a complicated question.

The issues in the case were clearly stated to the jury in the charge, and they were informed that the appellee could not recover unless the injury was caused in the manner and by the means alleged in the petition. If the injury was inflicted in the manner stated in the petition, the court, in the charge given, clearly informed the jury what degree of care upon the part of the appellant would relieve it from responsibility therefor, and in so far as the first, second and third charges asked by appellant were correct, they were substantially given in the main charge.

Having held that the appellee had the power to institute and maintain the suit, it is unnecessary to consider the action of the court below in refusing to give the fifth instruction asked.

The evidence tending to show how and from what cause the deceased received the injuries which resulted in his death is not all

direct, but is of such character that the jury must needs take into consideration all of the attendant circumstances in order to arrive at a just determination of those matters.

While we might wish, were we called upon originally to decide the case upon the facts, for clearer and more direct testimony, yet we cannot say that the verdict is so clearly without sufficient evidence to support it as to authorize us to set it aside.

The verdict does not seem to be excessive.

The judgment is affirmed.

AFFIRMED.

[Opinion delivered November 30 1883.]