## SOUTHERN PAC. CO. v. DE VALLE DA COSTA.

(Circuit Court of Appeals, First Circuit.   October 4, 1911.)

No. 928.

1. DEATH (§ 8*)—WRONGFUL DEATH—STATE STATUTES—APPLICATION—DEATH ON HIGH SEA.

The Kentucky wrongful death act (Ky. St. 1909, § 6 [Russell's St. § 11]), confers a right of action against a corporation, a citizen of that state, for death of another resulting from the corporation's negligence, while operating a vessel on the high seas.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 12, 36, 52, 121, 133; Dec. Dig. § 8.*

What law governs actions for wrongful death, see note to Burrell v. Fleming, 47 C. C. A. 606.]

2. DEATH (§ 35*)—WRONGFUL DEATH—LIABILITY UNDER FOREIGN STATE STATUTE—ENFORCEMENT.

Liability created by Ky. St. 1909, § 6 (Russell's St. § 11), against a corporation, a citizen of that state, for the wrongful death of an employé, will be enforced in the courts of another jurisdiction having a similar statute if there is no violation of public policy of the state wherein the suit is brought.

[Ed. Note.—For other cases, see Death, Cent. Dig. § 50; Dec. Dig. § 35.*]

3. EXECUTORS AND ADMINISTRATORS (§ 12*)—APPOINTMENT—JURISDICTION—CLAIM FOR WRONGFUL DEATH—"ASSETS."

Ky. St. 1909, § 6 (Russell's St. § 11), authorizing the maintenance of an action against a corporation for death of a servant due to negligence, provides that the action shall be prosecuted by the decedent's personal representative, and that the amount recovered, less funeral expenses and the cost of administration and such cost above the recovery including attorney's fees as are not included in the recovery from defendant, shall be for the benefit of and go to the kindred of deceased in a specified order. *Held* that, under such act, a claim for wrongful death constituted assets of the decedent's estate sufficient to confer jurisdiction on the probate court to appoint an administrator to enforce such liability, and this without reference to the fact that decedent was an alien.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 24; Dec. Dig. § 12.*

For other definitions, see Words and Phrases, vol. 1, pp. 556–559.]

4. EXECUTORS AND ADMINISTRATORS (§ 11*)—APPOINTMENT OF ADMINISTRATOR—CLAIM FOR WRONGFUL DEATH.

The fact that a cause of action in favor of an alien's administrator for wrongful death did not accrue to the intestate in his lifetime, but accrued only on his death by virtue of statute, was no objection to its being regarded as sufficient basis for appointment of an administrator, since the violation of decedent's right did not die with him, and his right to enforce the same, which did not exist at common law, was preserved by statute.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 25; Dec. Dig. § 11.*]

5. EXECUTORS AND ADMINISTRATORS (§ 12*)—WRONGFUL DEATH—ACTION—PLACE.

In case of wrongful death, either the court of the state wherein the cause of action accrued or the court of the state wherein the defendant resides should recognize the right of action as a sufficient basis for the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

190 F.—44

grant of letters of administration, and, if there were no assets save the death claim, there would be no necessity for taking out both domiciliary and ancillary administration.

[Ed. Note.—For other cases, see Executors and Administrators, Dec. Dig. § 12.*]

6. APPEAL AND ERROR (§ 1047*)—EVIDENCE—STATE STATUTES—JUDICIAL NOTICE.

Where an action for wrongful death, under Ky. St. 1909, § 6 (Russell's St. § 11), conferring such right of action, was removed to the federal court sitting in Massachusetts, defendant was not prejudiced by the fact that the Circuit Court took judicial notice of the Kentucky statute, and that it was not introduced in evidence; it appearing on appeal that the statute noticed was identical with that presented by defendant to the Court of Appeals.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 1047.*]

7. APPEAL AND ERROR (§ 1031*)—HARMLESS ERROR—FAILURE TO INTRODUCE STATUTE—ASSUMPTION BY APPELLATE COURT.

An appellate court which, in certain cases, is required to take judicial notice of the laws of the various states of the Union and may inform itself by mere inspection of a general statute that the trial court applied the law correctly, should not assume that error in failing to offer formal proof of a general state statute was harmful, when a mere inspection of the law would show that it was not harmful, and that the result would not have been different had the law been formally proved; it being open to the plaintiff in error to show that the error was harmless by exhibiting to the appellate court a statute conforming to that applied at the trial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4038–4046; Dec. Dig. § 1031.*]

8. EVIDENCE (§ 12*)—JUDICIAL NOTICE—MORTALITY TABLES.

The court will take judicial notice of the correctness of the standard mortality tables without their authenticity or general use being proved.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 17; Dec. Dig. § 12.*]

9. MASTER AND SERVANT (§ 201*)—DEATH—JOINT OR CONCURRING NEGLIGENCE.

Where a seaman was killed by the explosion of a steam valve due to the concurring negligence of the master in arranging the pipe to which it was attached in an unsafe manner and the negligence of a servant in opening the valve, the master was liable.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 515–534; Dec. Dig. § 201.*

Concurrent negligence of master and fellow servant, see note to Maupin v. Texas & P. Ry. Co., 40 C. C. A. 236.]

10. MASTER AND SERVANT (§ 285*)—DEATH OF SEAMAN—NEGLIGENCE—QUESTION FOR JURY.

In an action for death of a seaman by the explosion of a steam valve, whether the explosion was caused by an unsafe arrangement of the pipe to which it was attached *held* for the jury.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 285.*]

11. MASTER AND SERVANT (§ 265*)—CAUSES OF INJURY—BURDEN OF PROOF.

Where there appears in the proof various and alternative causes, each adequate to produce an injury to a servant, the burden is on plaintiff to solve the uncertainty and show that it was due to a particular cause existing through defendant's negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 877–908; Dec. Dig. § 265.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

12. MASTER AND SERVANT (§ 265*)—DEATH OF SERVANT—BURDEN OF PROOF.

In an action for death of a servant, the plaintiff's burden of proof to show the cause of the injury is not sustained by showing merely that it was due either to the negligence of the master or of a fellow servant, but he may establish his case by proof of the master's negligence adequate to produce the injury, without negativing all possible suggestions of the existence of other causes; the burden then shifting to defendant to prove other facts and show that the injury was due to causes for which the master was not responsible, or that the actual cause was so uncertain that the master's negligence did not appear with reasonable certainty.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 877- 908; Dec. Dig. § 265.*]

In Error to the Circuit Court of the United States for the District of Massachusetts.

Action by Viscount De Valle Da Costa, as administrator of Delfino Rodriguez, deceased, against the Southern Pacific Company. Judgment for plaintiff, and defendant brings error. Affirmed.

William D. Turner (Reginald Foster and George Hoague, on the brief), for plaintiff in error.

Wendall P. Murray (Charles F. Smith, on the brief), for defendant in error.

Before COLT, Circuit Judge, and ALDRICH and BROWN, District Judges.

BROWN, District Judge. This is a writ of error for review of the rulings of the Circuit Court in an action of tort for causing the death of the plaintiff's intestate, Delfino Rodriguez, through negligence.

The case has been before the courts in various aspects. See 160 Fed. 216; 167 Fed. 654; and 176 Fed. 843, 100 C. C. A. 313.

Rodriguez, a subject of the Kingdom of Portugal, was a coal passer on the steamship El Valle. His bunk was in the forecastle, wherein was an auxiliary engine used for moving the capstan and windlass. Steam was supplied to this engine by a steam pipe connected with a steam valve. By the bursting of this valve, Rodriguez, while in his bunk, was so badly scalded that he died in consequence. The vessel was on the high seas at the time of the injury.

Suit was brought in the superior court for the county of Suffolk and commonwealth of Massachusetts by the present defendant in error, as administrator appointed by a probate court of the state of Massachusetts. Upon the petition of the defendant, a corporation of the state of Kentucky, the case was removed to the Circuit Court.

The defendant by plea in abatement denied the validity of the grant of letters of administration. Upon the trial of said plea, it was stipulated as follows:

"It is hereby agreed that, unless the right of action against the defendant is assets in this jurisdiction, the deceased having no other property here, and not having been at the time of his death a resident of the state of Massachusetts, the plea in abatement is to be sustained; but, if such right of action is assets sufficient to give jurisdiction to the probate court to appoint an administrator here, the plea in abatement is to be overruled; and the case is

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

submitted to the court for a ruling upon the matter. This agreement is only to apply to this case and not to be evidence in any other proceeding."

The overruling of the plea in abatement is assigned as error. A jury trial was then had, wherein the jury found for the plaintiff and assessed damages in the sum of $5,000.

[1] The statute of the state of Kentucky, whereof the Southern Pacific Company, owner of the steamship, is a citizen, was held by the Circuit Court to give a right of action for a death occurring while the vessel was on the high seas. The Hamilton, 207 U. S. 398, 28 Sup. Ct. 133, 52 L. Ed. 264, we think directly supports this ruling; the court saying of a similar statute:

"We construe the statute as intended to govern all cases which it is competent to govern, or at least not to be confined to deaths occasioned on land, etc."

We find nothing in the opinion in La Bourgogne, 210 U. S. 95, 28 Sup. Ct. 664, 52 L. Ed. 973, which limits the decision in The Hamilton, or renders inapplicable to the Kentucky statute a like construction.

In The Hamilton, 207 U. S. 405, 28 Sup. Ct. 133, 52 L. Ed. 264, there was reserved the question whether the statute was intended to include foreign subjects. Upon this point, however, the opinion of the Circuit Court in Vetaloro v. Perkins (C. C.) 101 Fed. 393, and the opinion in Mulhall v. Fallon, 176 Mass. 266, 57 N. E. 386, 54 L. R. A. 934, 79 Am. St. Rep. 309, may be regarded as stating the correct view of the law. We are of the opinion that the Kentucky statute renders the defendant liable for the death of an alien occurring on the high seas through its negligence.

[2] This liability will be enforced in the courts of another jurisdiction having a similar statute if there is no violation of the public policy of the state wherein suit is brought. Northern Pacific R. R. v. Babcock, 154 U. S. 190, 14 Sup. Ct. 978, 38 L. Ed. 958; Stewart v. Baltimore & Ohio R. Co., 168 U. S. 455, 18 Sup. Ct. 105, 42 L. Ed. 537.

[3] While there is a general acceptance of this rule, there is much conflict of authority over the question of the proper party to bring suit to enforce the liability. If the statute which gives the right provides for a suit by the personal representative, a question arises whether it is a personal representative appointed by the courts of the state wherein death was caused, a personal representative appointed at the decedent's domicile, or a personal representative appointed in the jurisdiction where the defendant is sued.

It results that, though a defendant's liability may be clear, whatever course may be taken in an attempt to enforce this liability, there arise objections supported by good authority which imperil the substantial rights of those for whose benefit the liability was imposed. If administration is taken out in the place of domicile of the deceased, objection is made that only the state which gives the right of action can appoint a legal representative with authority to enforce that right of action. If a legal representative is appointed in such state, it is objected in the state wherein suit is brought that the authority of an administrator has the territorial limits of the state of his appointment. If suit is brought in the place of defendant's residence, a twofold objection may be made,

that the administrator should have been appointed either at the decedent's domicile or in the state whose statute creates the right of action. If an attempt is made to take ancillary administration, the objection is raised that this right depends upon the existence of assets in the state, and that a claim for damages for death is not assets within the state and does not warrant the appointment of an administrator. See Connor v. N. Y., N. H. & H. R. R., 28 R. I. 560, 68 Atl. 481, 18 L. R. A. (N. S.) 1252.

The ordinary rule limiting the authority of an administrator to the state of his appointment in many states has been relaxed in actions for causing death on the ground that the personal representative is rather a trustee for the beneficiaries named in the statute than an ordinary administrator; that he is rather a nominal party than the real party in interest; and that his authority is that of a nominal plaintiff.

Without questioning these decisions or the reasons assigned for the recognition of a foreign administrator in such cases, we are of the opinion that cases which support the right of a foreign administrator to maintain the suit are not inconsistent with the right to take out letters of administration in the residence of the defendant.

The right to administration is recognized whenever there are assets within the jurisdiction. Is a death claim assets for the purpose of the appointment of an administrator?

The enactment of a statute giving an action for death, and requiring that it shall be brought by a personal representative, we think should be regarded as a conclusive recognition of the right of administration to enforce such a claim. If a statute designates the personal representative of the deceased as the proper plaintiff, to limit the right to cases in which the deceased left assets other than the right of action would introduce an unreasonable and arbitrary distinction. To hold that suit might be brought in the state of Massachusetts for causing death if the deceased left property in the state, but that it could not be brought if he had no property, would be to make a distinction in favor of persons who have estates against persons who have no estates—to deny the remedy to those most in need of it.

In N. E. Mut. Life Ins. Co. v. Woodworth, 111 U. S. 138, 4 Sup. Ct. 364, 28 L. Ed. 379, it was held that a policy of life insurance is assets for the purpose of founding administration in another state in which a corporation does business and, as required by the statute, has an agent upon whom process may be served. It was held that the debt on the policy is assets, and the grant of letters of administration was upheld.

If simple contract debts are assets where the debtor resides, and if a corporation debtor may be held to have a domicile to give a situs to its debt at the place where it may be sued, the situs of this obligation, under the circumstances, would be in the state of Massachusetts, where the defendant has an agent, unless the rule is different as to obligations for tort and obligations in contract. For a distinction on this ground there seems to be no sufficient reason.

In Blackstone v. Miller, 188 U. S. 189, 23 Sup. Ct. 277, 47 L. Ed. 439, it was said, on a question of situs of the debt, that power over the person of the debtor confers jurisdiction. To hold that by the

law of Massachusetts its courts have power over the person of this defendant to compel it to respond to the obligation created by the statute of Kentucky is inconsistent with the view that there cannot be in Massachusetts a competent plaintiff.

The learned circuit judge dismissed the contention that there were no assets in this jurisdiction, as too artificial. "It is enough that assets and appointment came into being at the same moment."

This is criticised on the ground that assets of the estate of the deceased do not come into being at all. Stewart v. Baltimore & Ohio R. R. Co., 168 U. S. 445, 18 Sup. Ct. 105, 42 L. Ed. 537, is cited to show that the damages are not part of the estate of the deceased. This was said, however, in connection with the proposition that the plaintiff was simply a nominal plaintiff.

While under certain statutes it may be said that there are no assets of the estate of the decedent subject to the claims of the general creditors of a decedent's estate, yet it should be recognized that the defendant's liability arises out of its wrong to the deceased, and that the right of the beneficiaries is derivative from the right of the deceased.

The provision which makes a legal representative the proper plaintiff to enforce the liability is a recognition that the statute is based upon the rights of the deceased, and that the rule of the common law, which forbade an action if death ensued, being annulled, the right of the deceased remains to be enforced by his personal representative even though the statute provides a particular mode of distribution different from that of ordinary administration. To say that a reasonable compensation for his wrongful death is not to be regarded as assets for the purpose of obtaining administration is to afford a basis for technical objections which ignore the nature of the decedent's right and the principle of justice upon which such a statute is founded. In order that property be assets of an estate, it is not necessary that it follow the ordinary rules of distribution.

In Blagge v. Balch, 162 U. S. 439–463, 16 Sup. Ct. 853, 858 (40 L. Ed. 1032), Chief Justice Fuller observed:

"It often happens that administrators receive money which is not to be administered as part of the general assets, but is to be distributed in a particular way."

The reasoning of the opinions in Sargent v. Sargent, 168 Mass. 420, 47 N. E. 121, and Walsh v. Boston & Maine R. R. Co., 201 Mass. 527–533, 88 N. E. 12, supports the view that the value of a man's life to his wife or next of kin constitutes, with a certain limitation as to the amount, a part of his estate which he leaves behind him to be administered by his personal representative.

When the statutes of a state provide that an action for causing death may be brought by a personal representative for the benefit of the next of kin, we think it follows that there arises a right to the appointment of a personal representative on this ground alone (see Sargent v. Sargent, 168 Mass. 420, 47 N. E. 121); otherwise, as we have said, an unjust discrimination would follow. If in such state a similar right of action arising under the laws of another state will be enforced, we see no reason why the liability of the defendant in its jurisdiction

should not be regarded as a proper basis for probate jurisdiction and the grant of letters of administration.

A defendant's liability in tort, in the state of Massachusetts, implies a plaintiff capable of enforcing it in the courts and the right to procure the appointment of a legal representative, in cases where the statute designates a personal representative of the decedent as plaintiff. We find no reason for a discrimination between the rights of citizens of the state, citizens of another state, and aliens, in this respect. As the Massachusetts courts have refused to make a distinction between the substantial rights of foreign subjects and of citizens of the state, and have held a defendant equally liable to either (Mulhall v. Fallon, 176 Mass. 266, 57 N. E. 386, 54 L. R. A. 934, 79 Am. St. Rep. 309), it should follow, we think, that either has an equal right to letters of administration for the purpose of enforcing the liability.

[4] The contention that, since the cause of action did not accrue to the intestate in his lifetime, but accrued only upon his death by virtue of the statute, it cannot be regarded as a basis for the appointment of an administrator upon the decedent's estate, we cannot accept as a sound argument. A violation of the right of the decedent is the essence of the cause of action. The wrong to the decedent did not die with him, though at common law death absolved the wrongdoer from civil liability. The statute merely removes that absolution, and preserves the wrong to the deceased as a cause of action.

Whether a statute which makes a defendant liable for death by wrongful act is to be regarded as causing a survival of a right of action of the deceased, or as creating a new cause of action, may be a proper question when the principle of compensation, or the rights of creditors, is under discussion; but to apply this distinction for the decision of the question of the right to letters of administration, to enforce a liability based primarily upon a wrong to the deceased when there is no doubt as to the principle of compensation and no possible conflict between creditors and next of kin, can lead only to verbal confusion and unjust discrimination.

The plaintiff in error relies upon Richardson v. New York Central R. R., 98 Mass. 85; but in view of the express reference to this case as "materially modified if not overruled" in the later case of Walsh v. Boston & Maine R. R. Co., 201 Mass. 527–533, 88 N. E. 12, we do not feel bound to follow the reasoning of the earlier case.

The statutes of both states, Kentucky and Massachusetts, in providing that a personal representative of the deceased may sue, adopt the view that the foundation of the action is the right of the deceased, and that the violation of that right by the defendant is to be redressed by one who is the personal representative of the deceased, appointed by the same authority and with the same safeguards that are required of a personal representative to enforce other rights of the deceased after his death. The fact that the personal representative of the deceased is required in the first instance to gain possession, in connection with the nature of the right of the deceased, which is the basis of the cause of action, is a sufficient reason for holding this property to be assets of the estate of the deceased for all beneficial purposes, and for all purposes consonant with the intent of the statute.

In the present case, however, we are dealing with a statute providing that the administrator is to recover money and apply it in part to the purposes of the estate of the decedent. He is to receive assets of the estate of the decedent, using those terms in the strictest sense. By the statute of Kentucky it is provided that the amount recovered—

"less funeral expenses and the cost of administration, and such costs of recovery, including attorneys' fees, as are not included in the recovery from the defendant, shall be for the benefit of and go to the kindred of the deceased in the following order." Ky. St. 1909, § 6 (Russell's St. § 11).

The personal representative is to recover what would ordinarily be a charge against the estate of the decedent, i. e., funeral expenses, so that his recovery from the defendant includes what in the strictest sense is to be regarded as an asset of the decedent's estate to be applied by the administrator as in the ordinary course of administration.

Even if we consider the case on narrow grounds, the administrator in this case is suing for assets of the decedent's estate in his right as administrator, and not in the right of the beneficiaries. As there exists an obligation of the defendant to pay into the decedent's estate a sum of money to be applied to the ordinary expenses of an estate, and not to be applied for the benefit of the widow and next of kin, the objection that no assets of the decedent's estate come into being is untenable under this particular statute. But this distinction, though sufficient to meet a technical argument, we regard as altogether too narrow ground to be applied in cases of this character. If the right to compensation for such wrong is the only benefit which the deceased can confer upon his kindred, this should be held sufficient to uphold the action of a probate court even where the statute specifically requires that there shall be assets within the jurisdiction.

[5] We think further that either the court of the state wherein the cause of action accrued, or the court of the state wherein the defendant resides, should recognize the right of action for wrongful death as a sufficient basis for the grant of letters of administration. If there are no assets save the death claim, it should not be necessary to take out both domiciliary and ancillary administration, and especially should the right of action not be defeated through any inability to secure the appointment of a personal representative. The statutes do not create the rights of the beneficiaries as distinct rights proceeding from the statute. This theory would render such statutes of doubtful constitutionality. The beneficiaries take in and through the rights of the deceased, and the wrong is repaired through compensation to his family. The state of the law should be such as not to put the beneficiary to peril of correctly deciding which line of decisions he should follow in securing a personal representative. Whichever course he may take, under the present condition of the law he will be confronted with the objection that he should have taken the other. The common sense solution of this seems to be to hold that either course may be taken, and that we should recognize a right of this character as a sufficient basis for the appointment of legal representatives in the absence of express decision by the state court to the contrary.

There is, of course, the difficulty of a double appointment. Such a difficulty arose in Baltimore & Ohio R. R. Co. v. Evans (C. C. A.)

188 Fed. 6, where administration was taken out both in the domicile and in the state where the cause of action arose; but so far as the statutes provide for assets which, strictly speaking, are those of the decedent's estate, the ordinary principles of domiciliary and ancillary administration will govern. So far as the right is that of the beneficiaries, either court which appoints the legal representative is competent to protect the beneficiaries. Dennick v. R. R. Co., 103 U. S. 11, 26 L. Ed. 439, expressly holds that an administrator appointed elsewhere than in the state where the cause of action accrued may enforce the liability.

[6] The plaintiff in error also objects that the Kentucky statute was not offered in evidence and was not proved at the trial, and cites Union Pacific R. R. Co. v. Wyler, 158 U. S. 285, 15 Sup. Ct. 877, 39 L. Ed. 983. That case, however, does not support the contention that there was error in taking judicial notice of the laws of the state of Kentucky. The count was so framed as to show that it was based upon a Kentucky statute. In Union Pacific R. R. Co. v. Wyler, the court said that the question involved was one of pleading and was not controlled by the law in regard to judicial notice of statutes, which is a matter of evidence.

The cases in the Supreme Court are somewhat confused by the difference in rule which obtains between cases brought before the Supreme Court on writ of error to a state court, wherein the Supreme Court does not take judicial notice of the laws of all the states, and cases which are properly brought before the United States courts. There the rule seems to be established that the courts take judicial notice not only of the statutes of the district wherein the Circuit Court is sitting, but of the statutes of other states of the Union. Liverpool Steam Co. v. Phenix Insurance Co., 129 U. S. 445, 9 Sup. Ct. 469, 32 L. Ed. 788; Lamar v. Micou, 114 U. S. 218-223, 5 Sup. Ct. 857, 29 L. Ed. 94; Owings v. Hull, 9 Pet. 607-625, 9 L. Ed. 246.

Cases of this character should be distinguished from cases of the class of Hanley v. Donoghue, 116 U. S. 1, 6 Sup. Ct. 242, 29 L. Ed. 535, and Renaud v. Abbott, 116 U. S. 277, 285, 6 Sup. Ct. 1194, 29 L. Ed. 629.

As the plaintiff in error has presented to this court what it states to be the Kentucky statute, and as there is no difference between this and the statute applied by the Circuit Court, it is apparent that its objection is wholly technical and that by its own showing, if there was error, as is contended, it was harmless error.

[7] We question whether, under ordinary circumstances, informality in proof of a general statute of one of the United States should be a sufficient ground for reversal by a United States court, unless there is the further contention that the statute law was other than it was assumed to be in the trial court. An appellate court which in certain cases is required to take judicial notice of the laws of the various states of the Union, and which may inform itself by mere inspection of a general statute that the court below applied the law correctly, should not assume that error is harmful when a mere inspection of a general statute would show that it was not harmful, and that the

result would not have been different had the law actually applied been presented with formal proof.

In any event, we think that it should be open to a party to show that the error was harmless by exhibiting in the appellate court a statute conforming to that applied as law in the court below. While there· may be exceptional cases in which a reversal or a new trial should be had on this ground, a rule which requires proof in order to guard against error should not be made an instrument whereby an appellate court can be compelled to find error, and assume it to be harmful, when it may readily ascertain that it is in fact harmless.

· It is further urged that as the declaration contained three counts, and the verdict was general, it cannot now be known on which count it was rendered.

The jury made special findings: That the defendant was negligent, and that the occurrence did not happen within the jurisdiction of the state of Texas (wherefrom it follows under the circumstances that they necessarily found that it was upon the high seas). It conclusively appears, therefore, that the verdict·was not based upon the first count; neither is there any reasonable possibility that the jury could have found that the vessel was within the jurisdiction of the state of New York. The main question of negligence was substantially the same under each count, and the jury by special verdict settled the dispute about the place of accident.

· · We find no such uncertainty in the record as would justify a new trial.

[8] It is urged also that the court erred in permitting the use of mortality tables without requiring any evidence that the tables were authentic or in general use; but this is ?? matter of judicial notice, and there is no error in this respect. · Chamberlayne's Modern Law of Evidence, § 859 C.

[9] The contention that even if there was a defective pipe there could be no recovery if there was negligence in opening the steam valve is without merit. The principle that for joint or concurring negligence of master and servant the master is liable is well settled. Deserant v. Cerillos Coal R. R. Co., 178 U. S. 409, 20 Sup. Ct. 967, 44 L. Ed. 1127; Northern Pacific R. R. v. Charless, 162 U. S. 359–364, 16 Sup. Ct. 848, 40 L. Ed. 999.

If the sixteenth request for a ruling and its denial stood alone, we think there would be error in its refusal as an abstract proposition; but the fifteenth and sixteenth requests were presented in connection with the contention that if there was concurrent negligence of master and servant there could be no liability, and counsel expressly stated: "I have framed these two forms of prayer to embody these ideas." We think it clear that the .court so treated them in its ruling, and did· not pass· upon the sixteenth request apart from its application to the contention erroneously made as to the law of concurrent negligence of fellow servant and master.

This is apparent also from other portions of the charge, wherein the judge clearly and repeatedly instructed the jury that, in order to make the defendant liable, the accident must have been caused by the defendant's negligence in an improper arrangement of the pipes.

[10] It is further contended that there was no evidence of negli-gence which justified the submission of the case to the jury.

The plaintiff contended that there was a drop in the steam pipe, with no drip cock or outlet, and that this was an unsafe arrangement, since it permitted an accumulation of water. There was expert testimony from which the jury was warranted in finding this an unsafe arrangement, likely to cause an explosion.

Upon the fact of the existence of a drop in the pipe the testimony was in conflict. We recognize the force of the argument of the plaintiff in error as to the comparative weight of the testimony on this point; but, as the question was merely of the comparative weight of testimony and involved matters of credibility, we cannot disturb the verdict on this account.

The evidence that such an arrangement would be likely to cause an accumulation of water was supplemented by evidence tending to show that upon the explosion water came out of the pipe; one witness testifying that Rodriguez's berth, opposite the place where the pipe burst, was as wet as if buckets of water had been turned upon it, and wetter than other berths. And it appears that, although the forecastle was filled with steam, other men did not suffer like injury, but escaped.

After the explosion the valve had a hole in it as large as an egg, blown out of one side: the edges of the holes being irregular in outline, with cracks radiating outwards.

There was no direct evidence as to the manner in which steam was turned on. It was the duty of the carpenter or second mate to see to it, and there was evidence that after the explosion the mate had in his hand the iron fork used for this purpose. Negligence in this particular cannot be assumed without proof, and in the absence of proof the jury were entitled to presume that it was done in ordinary course. Moreover, even if the steam were suddenly turned on by a fellow servant, this would not relieve the defendant, since the accumulation of water in the pipe would make the liability to explosion much greater.

[11] Where there appear in proof various and alternative causes each adequate to produce an injury, the burden is upon the plaintiff to solve the uncertainty and show that it was due to a particular cause existing through defendant's negligence. It is true, of course, that it is not enough to show a defective appliance existing through the master's negligence, but it is necessary to establish the causal connection between this negligence and the injury. This rule, however, is not necessarily applicable in this case. The negligence of a fellow servant in admitting steam too suddenly is not proved, and had it been proved would not absolve the defendant if the defect in the pipe concurred with this negligence in the production of the explosion.

It is also contended that a latent defect in the valve was the cause of the accident. The valve was not produced. A single witness stated that he inspected the valve after the accident, and stated the nature of the break, and that a part looked like poor metal. This evidence was not so definite or so conclusive as to require the jury to accept it as proof of a latent defect in the valve. Neither are the expressions of

expert opinion which have been referred to so conclusive as to show that the jury erred in not finding a defect in the valve.

Upon the whole evidence we cannot say that the jury was not justified in finding that but one adequate cause of the accident appeared, and that this was the defective arrangement of the pipe. The jury was not required to find that either of the other causes suggested did exist as a matter of fact, and were entitled to reject as mere suggestions of possibilities the argument as to the existence of other causes.

[12] The burden which rests upon the plaintiff to show the cause of an injury is of course not sustained by showing merely that it was due either to the negligence of the master or of a fellow servant. He may, however, establish his case by proof of the master's negligence adequate to produce an injury without negativing all possible suggestions of the existence of other causes. The plaintiff having produced proof of a cause, and this cause being adequate, the burden rested upon the defendant to prove other facts which would show either that the injury was due to causes for which the master was not responsible, or that the actual cause of the injury was so uncertain that the master's negligence did not appear with reasonable certainty.

Upon a careful consideration of the brief of the plaintiff in error we are of the opinion that, while there may remain doubts as to the correctness of the jury's conclusion upon disputed matters of fact, the verdict cannot be disturbed on that ground. We find no error of law which would justify a reversal of the judgment.

The judgment of the Circuit Court is affirmed, and the defendant in error recovers costs.