GULF, C. & S. F. RY. CO. v. BEEZLEY.†
(Court of Civil Appeals of Texas. Austin. Jan. 22, 1913. Rehearing Denied Feb. 12, 1913.)

1. EXECUTORS AND ADMINISTRATORS (§ 29*)—APPOINTMENT—COLLATERAL ATTACK.

In an action by the administratrix of a decedent for damages for his death, the defendant cannot attack the judgment of the probate court appointing the administratrix.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 177–182, 1411; Dec. Dig. § 29.*]

2. EXECUTORS AND ADMINISTRATORS (§ 11*)—APPOINTMENT—POWER OF PROBATE COURT.

Under Federal Employer's Liability Act April 22, 1908, c. 149, 35 Stat. 65, as amended by Act April 5, 1910, c. 143, 36 Stat. 291 (U. S. Comp. St. Supp. 1911, p. 1322), giving a right of action for wrongful death to the personal representative of a deceased employé, letters of administration may be issued although the deceased left no property subject to administration save the cause of action, for that is property and an asset of the estate.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 25; Dec. Dig. § 11.*]

3. MASTER AND SERVANT (§ 276*)—INJURIES TO SERVANT—EVIDENCE—SUFFICIENCY.

In an action against a master for the wrongful death of a servant, evidence held sufficient to support the verdict for plaintiff.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 950–952, 954, 959, 970, 976; Dec. Dig. § 276.*]

4. TRIAL (§ 140*)—PROVINCE OF JURY.

The jury are the sole judges of the credibility of the witnesses and the weight of the testimony.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 334, 335; Dec. Dig. § 140.*]

5. DEATH (§ 99*)—EXCESSIVE DAMAGES.

Where a brakeman, who earned on an average of $100 a month and was 29 years of age, left surviving him a wife and three small children, an award of $20,000 damages for his death was not excessive; it appearing that he expended all of his salary for the benefit of his family, and that he was in line for promotion.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 125–130; Dec. Dig. § 99.*]

Appeal from District Court, Bell County; John D. Robinson, Judge.

Action by Mrs. Lillie Beezley, as administratrix, against the Gulf, Colorado & Santa Fé Railway Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Terry, Cavin & Mills, of Galveston, and A. H. Culwell, of Dallas, for appellant. A. L. Curtis, of Belton, and Winbourn Pearce, of Temple, for appellee.

RICE, J. Appellee, as administratrix, for the benefit of herself and her three minor children, brought this suit against appellant to recover damages on account of the death of her husband, Chas. Beezley, the father of said minors. It is alleged that he was killed at Lometa on August 18, 1911, while engaged in the employ of appellant as a freight brakeman on a train of cars, which he was undertaking to uncouple. The negligence alleged was the rough handling and violent jerking and jarring of said cars, whereby he was thrown underneath the wheels, run over, and killed. Appellant answered by plea in abatement, insisting that the plaintiff had no right to institute this suit as administratrix for the reason that the probate court of Bell county was not authorized to grant letters of administration on the estate of her deceased husband; and likewise answered by general demurrer, general denial, assumed risk, and contributory negligence. The plea in abatement was overruled, as were also the

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes
† Writ of error denied by Supreme Court.

demurrers, and the case was submitted to a jury, who returned a verdict against appellant for $20,000, which was apportioned among appellee and her three minor children, and judgment rendered accordingly, from which this appeal is prosecuted.

[1] The chief grounds urged for a reversal of the judgment are: First, that the court erred in failing to sustain the plea in abatement; and, second, that the verdict of the jury is not supported by the evidence. With reference to the first contention, we think it might be sufficient to say that said plea, as presented, was a collateral attack upon the judgment of the probate court appointing plaintiff administratrix, and was therefore properly overruled. See Mills v. Herndon, 77 Tex. 89, 13 S. W. 854; Rodgers v. Kennard, 54 Tex. 30; Murchison v. White, 54 Tex. 78; Templeton v. Ferguson, 89 Tex. 47, 33 S. W. 329; Harwood v. Wylie, 70 Tex. 538, 7 S. W. 789; Cooper v. Railway Company, 41 Tex. Civ. App. 596, 93 S. W. 201; Railway Co. v. Hook, 60 Tex. 403; Rogers v. Tompkins, 87 S. W. 379; So. Pac. Ry. Co. v. De Valle Da Costa, 190 Fed. 689, 111 C. C. A. 417.

[2] But even if this had been a direct attempt by suit to vacate said judgment, we think that the plea could not be sustained. See Rivera v. A., T. & S. F. Ry. Co., 149 S. W. 223. The deceased having been killed while in the employ of appellant who was then engaged in interstate commerce, this suit was brought by appellee under the Federal Employer's Liability Act, passed April 22, 1908 (35 Stat. 65, c. 149), as amended by Act April 5, 1910, 36 Stat. 291, c. 143 (U. S. Comp. St. Supp. 1911, p. 1322), under which an action for the death of an employé must be brought by the personal representative of the deceased. See G., C. & S. F. Ry. Co. v. Lester, 149 S. W. 841. The contention on the part of appellant is that if, ordinarily, no necessity existed for administration upon the estate of the deceased, then no letters of administration could be granted upon his estate for the sole purpose of enabling the surviving wife to bring this suit under said Federal Employer's Liability Act. This insistence has been held in this state to be untenable in the case of Rivera v. A., T. & S. F. Ry. Co., supra, wherein it is said that, under the laws of this state, a cause of action is property and an asset of the estate, and, being property and an asset of the estate, the right to administration would, of necessity, follow; the court in this connection quoting with approval from the opinion in the case of So. Pac. Ry. Co. v. De Valle Da Costa, supra, as follows: "The enactment of a statute giving an action for death and requiring that it shall be brought by a personal representative we think should be regarded as a conclusive recognition of the right of administration to enforce such a claim. If a statute designates the personal representative of the deceased as the proper plaintiff,

to limit the right to cases in which the deceased left assets other than the right of action would introduce an unreasonable and arbitrary distinction. To hold that suit must be brought in the state of Massachusetts for causing death, if the deceased left property in the state, but that it could not be brought if he had no property, would be to make a distinction in favor of persons who have estates, against persons who have no estates— to deny the remedy to those most in need of it."

The court further says: "While under certain statutes it may be said that there are no assets of the estate of the decedent subject to the claims of the general creditors of a decedent's estate, yet it should be recognized that the defendant's liability arises out of its wrong to the deceased, and that the right of the beneficiaries is derivative from the right of the deceased. The provision which makes a legal representative the proper plaintiff to enforce the liability is a recognition that the statute is based upon the rights of the deceased, and that, the rule of the common law, which forbade an action if death ensued, being annulled, the right of the deceased remains to be enforced by his personal representative, even though the statute provides a particular mode of distribution different from that of ordinary administration. To say that a reasonable compensation for his wrongful death is not to be regarded as assets for the purpose of obtaining administration is to afford a basis for technical objections which ignore the nature of the decedent's right and the principle of justice upon which such a statute is founded. In order that property be assets of an estate, it is not necessary that it follow the ordinary rules of distribution. In Blagge v. Balch, 162 U. S. 439, 463, 16 Sup. Ct. 853, 858, 40 L. Ed. 1032, Chief Justice Fuller observed: 'It often happens that administrators receive money which is not to be administered as a part of the general assets, but is to be distributed in a particular way.' The reasoning of the opinions in Sargent v. Sargent, 168 Mass. 420, 47 N. E. 121, and Walsh v. Boston & Maine R. Co., 201 Mass. 527, 88 N. E. 12, supports the view that the value of a man's life to his wife or next of kin constitutes, with a certain limitation as to the amount, a part of his estate which he leaves behind him to be administered by his personal representative. When the statutes of a state provide that an action for causing death may be brought by a personal representative for the benefit of the next of kin, we think it follows that there arises a right to the appointment of a personal representative on this ground alone (see Sargent v. Sargent, 168 Mass. 420, 47 N. E. 121); otherwise, as we have said, an unjust discrimination would follow. If in such a state a similar right of action arising under the laws of another state will be enforced, we see no reason why the liability of the defendant in

its jurisdiction should not be regarded as a proper basis for probate jurisdiction and the grant of letters of administration."

The holding in Cooper v. G., C. & S. F. Ry. Co., supra, does not contravene the above holding because in that case the deceased and the beneficiaries were residents of Oklahoma territory, while the application for administration was filed in Dallas county, Tex. At any rate, the Supreme Court denied a writ of error in the case from which we have just quoted. We therefore feel justified in holding that the court did not err in overruling appellant's plea in abatement.

[3,4] Adopting the testimony of plaintiff, we think it sufficiently appears that the deceased lost his life on account of the negligence of the defendant. While the verdict of the jury is large, we do not think, as insisted by appellant, that it is without evidence to support it. It is true that the principal witness Winfrey, upon whom the finding in behalf of plaintiff mainly rests, was shown to have made a statement contradictory to his testimony upon which the case is based; but it appears from his testimony that this impeaching statement was not read over to him at the time, and he denies the truth of certain parts thereof reflecting upon his testimony on the trial. Besides, his testimony with reference to the cause of the accident, to wit, the sudden severe jerking of the train, is corroborated by the testimony of three disinterested witnesses. This witness testified that, while the deceased was undertaking to uncouple the cars, the train gave a lunge forward and threw him under the trucks and they passed over him; that it was an extra hard jerk; that he had never seen one as hard as that, and this jerk caused the deceased to fall under the wheels.

Mrs. McAnelly, as well as her husband, who were sitting on their gallery, some 200 yards away on the opposite side of the train from where the deceased fell, both testified that their attention was directed immediately before the injury to the switching cars by reason of a loud noise, as though made by the jerking of the cars as though they ran into each other, Mrs. McAnelly stating that it sounded like "the whole thing was busted to pieces"; that, a very few minutes after, they saw people running in that direction; that they immediately went and found the deceased on the ground bleeding from his wounds.

Johle, another witness, who was at the time in the employ of appellant, riding in one of the cars of the train then being switched, stated that he heard a man halloa; that there was a very severe jerk of the train just before he halloed—it seemed to be a stop jerk. Immediately after feeling the hard jerk, he heard the man halloa; that he

afterwards ascertained that deceased was the person who halloed.

It is undisputed that the deceased was injured while engaged in switching the cars. The cause of his fall only is in dispute, the appellee contending that this was brought about by the negligent and extraordinarily hard jerk of the train, while the appellant insists that the foot of deceased slipped from its place in the stirrup, and that he was thereby caused to fall under the cars; and, on this point of difference, the case went to the jury, who have found in favor of appellee's contention. The jury are the sole and exclusive judges of the credibility of the witnesses and the weight to be given to their testimony. They have seen fit to sustain the contention of appellee, and we are not disposed to set aside their verdict merely for this reason.

[5] We overrule the assignment complaining that the verdict is excessive. It appears that the deceased was 29 years of age, and left surviving him a wife and three small children. It appears that he was exemplary in habits, devoted to his family, and was, according to the testimony, earning on an average of over $100 a month, all of which he expended for the benefit of his family; that there was a probability of promotion in his line of work, whereby he might have earned a larger salary. Under these circumstances, we think the verdict is responsive to the evidence, and should not be disturbed on account of its amount. See Freeman v. McElroy, 126 S. W. 657.

We have examined the remaining assignments and conclude that they are without merit. Finding no error in the proceedings of the trial court, its judgment is affirmed.

Affirmed.