## GRIFFIN v. OVERMAN WHEEL CO.

(Circuit Court of Appeals, First Circuit.    April 5, 1894.)

### No. 82.

1. QUESTION FOR REVIEW ON APPEAL,
    The record recited that at the conclusion of plaintiff's evidence defendant asked the court to rule that there was no evidence that deceased was in the exercise of due care, and that the court so ruled, and thereupon ordered a verdict for defendant, to which ruling and order plaintiff excepted. *Held,* that the question for review was restricted to the precise proposition stated, namely, whether there was evidence to go to the jury that deceased was in the exercise of due care.

2. PRACTICE—OBJECTIONS INTERPOSED CANNOT BE ENLARGED TO DETRIMENT OF OTHER PARTY.
    The practice in the federal courts is thoroughly settled that when one party makes a motion, or interposes an objection, on grounds specifically stated, he cannot, at a subsequent stage of the case, shift or enlarge his position, unless perhaps when it clearly appears that by so doing no detriment could come to the other party.

3. DEATH BY WRONGFUL ACT — CONTRIBUTORY NEGLIGENCE — QUESTION FOR JURY.
    In an action under the employers' liability act of Massachusetts (Acts 1887, c. 270) for the death of a night watchman, who was found dead on the ground near a narrow, unrailed bridge running between two buildings, over which he customarily passed in his rounds, the jury are entitled to determine, by inference from the facts proved, the question whether he was in the exercise of due care, although, from the nature of the case, there could be no positive proof on the subject.

4. SAME—CONTRIBUTORY NEGLIGENCE—BURDEN OF PROOF.
    In such an action the federal courts should apply their own rule, that contributory negligence is a matter of defense, and they are not bound by the Massachusetts decisions to the contrary.    Per Webb, J.

In Error to the Circuit Court of the United States for the District of Massachusetts.

This was an action by Mary Griffin against the Overman Wheel Company to recover damages for the death of her husband, John Griffin. At the close of plaintiff's evidence the circuit court directed a verdict for defendant, which was done, and judgment entered accordingly. Plaintiff brings the case to this court on writ of error.

The action is founded on chapter 270 of the Acts of 1887, Acts and Resolves of Massachusetts, passed May 14, 1887, and the declaration is in three counts, under clause 1 of section 1 of said act, which is as follows: "Where, after the passage of this act, personal injury is caused to an employee, who is himself in the exercise of due care and diligence at the time: By reason of any defect in the condition of the ways, works, or machinery connected with or used in the business of the employer which arose from or had not been discovered or remedied owing to the negligence of the employer or of any person in the service of the employer, and intrusted by him with the duty of seeing that the ways, works, or machinery were in proper condition; * * * the employee, or, in case the injury results in death, the legal representatives of such employee, shall have the same right of compensation and remedies against the employer as if the employee had not been an employee of nor in the service of the employer, nor engaged in its work."

John Griffin was a night watchman at the defendant's factory, in Chicopee Falls, having entered its employ in February, 1891. It was his duty, as such, to make the rounds of a certain number of the defendant's buildings once every hour during the night, and to punch several buttons which were connected by electrical appliances with a watchman's clock or dial in the defendant's office, upon which a mark was registered every time a button was punched. Griffin had 17 of these buttons to punch, numbered consecutively from 31 to 47, inclusive. The route which Griffin followed in punching these buttons was as follows: He started in the engine room, so called, of mill No. 2. There he punched button No. 31; went from there to the basement of mill No. 2, where he punched button No. 32; from there to the front of the basement, and button No. 33; thence to the front of the second story, and button No. 34; thence to the center of the second story, and button No. 35; thence to the second story of the rubber mill, so called, a building about 15 feet north of mill No. 2, and connected with mill No. 2 by a bridge about 4½ feet wide and 15 feet from the ground. In this second story of the rubber mill, button No. 36 was located. On the night of the accident he was seen to start on his round at 1:30 o'clock a. m., punching button No. 31 in the engine room. He was not seen again until he was found, about two hours afterwards, lying on his back, on the ground, dead, between the rubber mill and mill No. 2, east of the bridge, with his head towards mill No. 2 and his feet towards the rubber mill, and his lantern by his side, crushed so that the oil ran out of it. There was a cut about two inches long upon the back of his head, in which there was sand and gravel; and his skull was fractured. The watchman's clock or dial in the office showed that on the 1:30 o'clock trip buttons Nos. 31, 32, 33, 34, and 35 had been punched, and button No. 36 had not.

The bridge had been completed about four weeks before the night of Griffin's death, and since that time it had been his custom, in making his rounds, to go from mill No. 2 to the rubber mill by way of the bridge. That was the direct and natural route, and the one which he always took, so far as the evidence showed. The buttons had been located with a view to his using the bridge in going from mill No. 2 to the rubber room. The electrician who put in the wires and buttons had been instructed to cover the most ground with the least number of buttons. If Griffin went from mill No. 2 to the rubber mill by any other route, he would have had to retrace his steps from the second story of mill No. 2 to the starting point, and would thus be put a great deal out of his way. The electrician had, by order of the defendant's superintendent, changed Griffin's route after the buttons were put in, and gave him instructions as to the route he was to follow in punching the buttons; telling him to punch the button in the enameling room (No. 35), and then to "punch the one in the rubber mill over the bridge" (No. 36).

The bridge in question sloped somewhat from mill No. 2 to the rubber mill. It was in evidence that the night on which Griffin met his death was cold,

dark, cloudy, and frosty, and that the bridge was in a slippery condition. There were no railings or guards on either side of the bridge. About a week before the night of Griffin's death a small engine had been placed in the machine room on the ground floor of mill No. 2, from which there was an exhaust pipe, which came out of the ground floor of the mill, through the window of the basement, about 16 inches from the ground, and about 18 inches west of the bridge, and extended about 18 inches beyond the window. On the night in question the wind was blowing from the northwest, and the steam from this exhaust pipe completely enveloped the bridge for a space about eight feet square, so that, according to one witness, "it was pretty hard work for a man to go over that bridge that night with a lantern to find his way." It was in evidence that the bridge had never been known to be in such a condition as to steam and slipperiness before. There was medical testimony that a fall from the bridge would account for the marks of injury on Griffin, and for his death. At the conclusion of the plaintiff's testimony the defendant asked the court to rule that there was no evidence that Griffin was in the exercise of due care. The court so ruled, and the plaintiff excepted, and sued out a writ of error to this court. Plaintiff assigns for error that the court erred in ruling that there was no evidence that Griffin was in the exercise of due care.

James B. Carroll and James E. Cotter, for plaintiff in error.

The burden of establishing affirmatively freedom from contributory negligence may be successfully borne though there were no eyewitnesses of the accident, and even although the precise cause and manner of occurrence are unknown. If, in such a case, the surrounding facts and circumstances reasonably indicate or tend to establish that the accident might have occurred without negligence of the deceased, that inference becomes possible, in addition to that which involves a careless or willful disregard of personal safety, and so a question of fact may arise to be solved by a jury, and require a choice between possible but divergent inferences. Finch, J., in Tolman v. Railroad Co., 98 N. Y. 198–203.

Luther White and Edward S. White, for defendant in error.

Before PUTNAM, Circuit Judge, and NELSON and WEBB, District Judges.

PUTNAM, Circuit Judge. When the defendant in the court below moved that a verdict be directed in its favor, it was put in the following form, as appears by the record:

"The defendant offered no testimony, and at the conclusion of the plaintiff's testimony asked the court to rule that there was no evidence that the said John Griffin was in the exercise of due care."

John Griffin was the person on account of whose death the action was commenced. The record then proceeds:

"The judge so ruled, and ordered a verdict for the defendant, and thereupon a verdict was so returned; to which ruling and order the plaintiff excepts, and she prays that her exceptions may be allowed."

By the form of the defendant's request for this ruling it limited itself, for all the purposes of this appeal, to the precise proposition stated by it. The practice in the federal courts is thoroughly settled that when one party makes a motion, or interposes an objection, on grounds specifically stated, he cannot, at a subsequent stage of the case, shift or enlarge his position, unless perhaps when it clearly appears that by so doing no detriment could come to the other party. Therefore the party so moving or objecting is ordinarily required to put his finger on the very pith and marrow of what he claims, and

is ordinarily held to waive everything except what is so pointed out. Non constat, that if the defendant had expressed its motion generally, or if it had been expressed specifically with other reasons than those which were stated, the plaintiff might, with the leave of court, which is always easily obtained, have supplied any other deficiency. For this reason the only question before this court is whether the record shows there was evidence to go to the jury that Griffin was in the exercise of due care in connection with the injury which occurred to him.

It was suggested at the argument of the case that, even under the employers' liability act of Massachusetts, on which statute plaintiff relies, the federal courts will apply their general rule that the want of due care on the part of the plaintiff, in a case of an injury happening through negligence, is a matter of defense, and that the plaintiff is not ordinarily required, in the first place, to give evidence touching it. That question was not raised in the circuit court, and has not been brought before us in such form as renders us desirous of disposing of it, and we are not required to do so in the present case.

We do not deem it necessary to set out the evidence in the court below, or to analyze it in this opinion, and we consider it sufficient to say that the case falls within the practical application of the rules touching due care, and of the inferences to be drawn from the facts proven, which are accepted and approved in Maguire v. Railroad Co., 146 Mass. 379, 382, 15 N. E. 904; Thyng v. Railroad Co., 156 Mass. 13, 16, 30 N. E. 169; and Maher v. Railroad Co., 158 Mass. 36, 44, 32 N. E. 950.

We do not intend to suggest whether the propositions covered by these cases, and which we apply to the case at bar, are or not mere rules of evidence as to which we are bound by the decisions of the highest court of the state of Massachusetts, because, whether we are bound by them or not, they meet our approval, which is sufficient at present. We will only add that the circumstances of the various cases which we cite, as well as those of that at bar, essentially distinguish them from cases like that of the approach of a traveler to a railroad crossing, where, ordinarily, it is necessary to show the performance of some positive duty on the part of the person injured in order to make out due care.

Judgment of the circuit court reversed, and case remanded for further proceedings.

NELSON, District Judge, concurs in this opinion.

WEBB, District Judge (concurring). This case depends on the correctness of the ruling of the circuit court ordering a verdict for the defendant. As stated in the plaintiff's bill of exceptions:

"The defendant offered no testimony, and at the conclusion of the plaintiff's testimony asked the court to rule 'that there was no evidence that the said John Griffin was in the exercise of due care.' The judge so ruled, and ordered a verdict for the defendant, and thereupon a verdict was so rendered; to which ruling and order the plaintiff excepts, and prays that her exceptions may be allowed."

The only error assigned is this ruling and order of a verdict.

It is obvious that there is involved in this case thus presented a question of law as well as one of fact. If, in fact, the plaintiff had offered no evidence proper to go to the jury upon the due care and diligence of John Griffin, was the ruling correct? Contributory negligence on the part of a person injured is always fatal to his maintaining an action for the recovery of damages on account of the negligence of a defendant. There is, however, great conflict of courts in respect to the party upon whom the burden of proof rests. Many courts hold the plaintiff bound to prove affirmatively that he was in the exercise of proper care, and that no negligence on his part contributed to the injury; others maintain the rule that contributory negligence on the part of the person injured is matter of defense, and must be proved by the whole evidence, irrespective of the side by which it is produced. In the courts of the United States the rule that contributory negligence is a matter of defense is firmly settled. Railroad Co. v. Gladmon, 15 Wall. 401; Railroad Co. v. Horst, 93 U. S. 291; Hough v. Railway Co., 100 U. S. 213, 225; Railroad Co. v. Mares, 123 U. S. 710, 720, 721, 8 Sup. Ct. 321; Coasting Co. v. Tolson, 139 U. S. 551, 557, 11 Sup. Ct. 653; Railway Co. v. Volk, 151 U. S. 73, 77, 14 Sup. Ct. 239. The contrary rule prevails in the courts of Massachusetts, in which state this case arose. This, however, is not a matter wherein the federal courts are bound to follow the state decisions. But it is said this case arises under a state statute, and that the interpretation of that statute by the state court must be followed. That statute is, so far as the present inquiry is concerned, as follows:

"Where, after the passage of this act, personal injury is caused to an employee, who is himself in the exercise of due diligence at the time: By reason of any defect in the ways, works or machinery, connected with or used in the business of the employer, which arose from or had not been discovered or remedied owing to the negligence of the employer or of any person in the service of the employer, and entrusted by him with the duty of seeing that the ways, works or machinery, were in proper condition; * * * the employee, or in case the injury results in death, the legal representatives of such employee, shall have the same right of compensation and remedies against the employer as if the employee had not been an employee of nor in the service of the employer, nor engaged in its work."

The manifest purpose and intention of this legislation were to place servants and employes on the same footing with, and to give them the same protection in, respect to injuries caused by the negligence of their employers that persons not employes or servants had. The statute removed, or was designed to remove, some of the preexisting limitations upon the remedy of an employe against his employer. Ryalls v. Mechanics' Mills, 150 Mass. 190, 22 N. E. 766. The words, "who is himself in the exercise of due care and diligence at the time," introduce no new limitation or restriction of the right to recover. They leave him just where other persons stand. If they were not found in the statute, there can be no doubt that every court would imply them. The implication would be compelled by the terms of the act that "such employee shall have the same right of compensation and remedies against the employer as if the employed had not been an employee of nor in the service of the employer, nor

engaged in its work." This "same right" was a right to compensa-tion and remedy for injury caused by the negligence of another, sub-ject to be defeated if the injured person's own negligence contributed to produce the injury. Since the passage of this act in 1887 numer-ous suits under it have been brought in the courts of the state. I do not find that in any of them the question of the effect of the words, "who is himself in the exercise of due care and diligence at the time," has challenged the consideration and interpretation of the court. The course of procedure, and the rule as to the burden of proof, pre-vailing in those courts in actions at common law have been followed without discussion or hesitation, as was to be expected. This court therefore is not embarrassed or controlled in the construction of the statute by any decision of the state court, and should, in view of the purpose of the act, give a construction consistent with its own rule that contributory negligence is matter of defense. Under such con-struction it follows that the court below erred in ordering a verdict for the defendant, and the cause should be remanded and a new trial had.

In view of the practical importance of the legal question, affording, as it does, a rule applicable to all cases that may come before this court under the employers' liability act of Massachusetts, it ought to be considered and determined, and, if found favorable to the plain-tiff, the decision of this case should be based on it, rather than on the question whether any evidence was produced at the trial which could and ought to have been submitted to the jury. But, while thus giving precedence to the point of law, I do not differ from other mem-bers of the court in the view that there was evidence as to the care and diligence of Griffin that should have been passed upon by the jury.