## ODELL MFG. CO. v. TIBBETTS.

(Circuit Court of Appeals, First Circuit. March 12, 1914.)

No. 1044.

1. MASTER AND SERVANT (§§ 286, 289*)—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

Where decedent, a servant in defendant's factory, was found dying, with his left arm and neck broken, near an unprotected shaft, but no one saw the accident, and there was no proof as to the precise way in which it occurred, the questions of defendant's negligence and decedent's con-

tributory negligence were for the jury. Griffin v. Overman Wheel Co., 61 Fed. 568, 571, 9 C. C. A. 542, applied.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1008, 1010–1015, 1017–1033, 1036–1042, 1044, 1046–1050, 1089, 1090, 1092–1132; Dec. Dig. §§ 286, 289.*]

2. APPEAL AND ERROR (§ 242*) — MISCONDUCT OF COUNSEL — OBJECTIONS — PRESENTATION TO TRIAL COURT.

Objections to certain statements of counsel in argument cannot be reviewed, where it does not appear that the trial court took any action, or was requested to take action, with reference thereto. Crumpton v. United States, 138 U. S. 361, 11 Sup. Ct. 355, 34 L. Ed. 958, applied.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1417–1425; Dec. Dig. § 242.*]

3. COURTS (§ 356*)—MOTION FOR NEW TRIAL—DENIAL—REVIEW.

Since, under the federal practice, the trial judge has special authority to grant a new trial, on account of matters of conflict of evidence, a federal appellate tribunal will not reverse an order denying a new trial on such ground except in an extreme case.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 937; Dec. Dig. § 356.*]

4. TRIAL (§ 256*)—INSTRUCTIONS—SPECIFIC INSTRUCTIONS—DUTY TO REQUEST.

Where decedent, an employé in defendant's paper mill, was killed by an unprotected shaft, and it was claimed that shortly before defendant's superintendent had promised decedent to protect the shaft, and the court charged that it was for the jury to determine whether the delay between the promise and the accident was reasonable or unreasonable, and, if unreasonable, they should find for defendant, it was defendant's duty, if it desired more specific instructions on such subject, to request them.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 628–641; Dec. Dig. § 256.*]

5. MASTER AND SERVANT (§ 221*) — INJURIES TO SERVANT — DANGEROUS MACHINERY—PROMISE TO GUARD—EFFECT.

Where an employé is especially engaged to work near an unguarded shaft, and is promised by the master that the shaft will be guarded, the master's engagement may be regarded as a protection to the employé until there is some express or otherwise specific change in the relation of the parties.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 638–640, 642–645; Dec. Dig. § 221.*]

In Error to the District Court of the United States for the District of New Hampshire; Edgar Aldrich, Judge.

Action by Mary J. Tibbetts, as administratrix of the estate of Frank Tibbetts, deceased, against the Odell Manufacturing Company. Judgment for plaintiff, and defendant brings error. Affirmed.

George F. Morris, of Lancaster, N. H. (Drew, Shurtleff, Morris & Oakes, all of Lancaster, N. H., on the brief), for plaintiff in error.

Robert C. Murchie, of Concord, N. H. (Alexander Murchie and Hollis & Murchie, all of Concord, N. H., on the brief), for defendant in error.

Before PUTNAM, DODGE, and BINGHAM, JJ.

PUTNAM, Circuit Judge. The facts of this case so far as they are not in dispute, and, beyond that, so far as, for the purposes of this

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

writ of error, we are bound to accept the position of the plaintiff in error, are as follows:

"This is an action brought by Mary J. Tibbetts, administratrix of the estate of Frank Tibbetts, against the Odell Manufacturing Company, to recover damages for causing the death of deceased on the 5th day of October, 1911. There was a trial, resulting in a verdict for the plaintiff for $5,250.

"The Odell Manufacturing Company owns and operates a paper mill. In its mill is what is known as a screen room, which is separated into two parts; one part containing screens and the other digesters. The portion of the room containing the digesters is separated from the screen room proper by a plank dam, so called, in the testimony, rising eight inches above the floor. Around and under the screens the floor is always wet. More or less water and stock (wet pulp) spatters from the screens.

"The screens are in the form of large boxes standing on raised metal frames. Motion is transmitted to them by means of a shaft and knocker blocks underneath the boxes. Power is applied by a quarter-turn belt running from an overhead shaft and pulley to a pulley on the screen shaft, which shaft is located under the screen boxes. The latter pulley is 22⅜ inches from the frame of the screen. The width of the rim of the pulley is about 9 inches, and the belt about 7½ inches. The bearing of the screen shaft is between the pulley and the frame of the screen about 5 or 6 inches inside of the inner side of the rim of the pulley. The dam between the screen room and the digester room is 5 feet and 2 inches from the outer rim of the pulley. The diameter of the pulley is 22 inches, and the rim is raised 4 inches above the floor. The screen near which the accident occurred was a corner screen in the screen room proper, and there is a walk between it and the south wall of the room. There are windows in the room at that point, so that the light is 'first-class.' There was more or less water and stock on the floor between the dam and the pulley at the time of the accident.

"To pass from the digester room between the screen and the wall a person would step over the dam in front of the screen and turn to the right, then again a little to the left, and straight ahead. In going through this walk one would pass the pulley first, then between the frame of the screen and the wall. The pulley revolved toward the wall.

"Tibbetts, the deceased, was a man 59 years of age, and had worked for the Odell Manufacturing Company in the screen room about 12 years. At the time of his death he was a screen repairer. His duties were to oil the screens, make minor repairs on them, such as could be made by one man, and keep the floor picked up and cleaned. If there was any small job of repairing to do in the room it was his duty to look after it.

"The accident happened about 4:30 p. m. on October 5, 1911. In the southwest corner of that portion of the room occupied by the digesters is a toilet. Just prior to the accident one Silsby was occupied painting the toilet, and one Patrick happened along there. While the two men were talking, Tibbetts, the deceased, came along with his oil can in his hand. The three talked a few minutes, when the men separated. Tibbetts started toward the screen driven by the pulley. This pulley was about 30 feet distant from the toilet room and in plain view. In going to his work from near the toilet room Tibbetts walked straight towards the pulley. He could not help seeing it all the time. In a minute or a minute and a half, Silsby heard a noise like something hitting the floor. When he went out he found Tibbetts lying on the floor on his left side, his feet toward the wall, and head toward a pump which is to the right of the pulley as he approached it. He was lying between the dam and pulley. His left arm and neck were broken. He was unconscious, and died within a few moments."

Aside from the above, there are no facts on which we can base a theory how the accident occurred.

It is not disputed that the mill was constructed with a guard so far protecting the pulley that, if it had been in place, the accident involved here would not have happened. It was out of place; and it had entire-

ly disappeared for some time. Under the circumstances, however, it is not necessary for us to undertake to trace it. It is not disputed that it was primarily the duty of the defendant to have this guard in place, and that if it had been in place the accident which occurred would not have happened.

It is also apparent that, on the face of the case, it was to a certain extent the duty of the deceased to restore the guard; but it is not shown that it was his duty to replace it if it had entirely disappeared. It is, however, also evident that if he had any duty in reference thereto it was suspended by the conversation with Moore, hereinafter referred to.

[1] Various theories were suggested by the defendant as to the manner in which the accident did in fact occur; but it may be said that it came about by Tibbetts coming in contact with the pulley, and that he would not have come in contact with it if the guard had been in place. Beyond this, under these circumstances, there being a lack of any real support to any theory as to the precise way in which the accident occurred which the court can recognize, as relieving the defendant, the practical application of the rules as to the proof of efficient negligence on the part of the defendant, and of contributory negligence on the part of Tibbetts, governs the case in favor of the plaintiff according to the practical results of Griffin v. Overman Wheel Co., 61 Fed. 568, 571, 9 C. C. A. 542, decided by this court on April 5, 1894, and of Southern Pac. Co. v. De Valle da Costa, 190 Fed. 689, 700, 111 C. C. A. 417, decided by us on October 4, 1911. Inasmuch, therefore, and especially as, under the peculiar rules of the federal court, it rests on the defendant to prove negligence on the part of the injured employé, the position is not such that we can uphold the motion of the defendant to direct a verdict in its favor which was submitted to the District Court, either on the alleged ground of lack of proof of efficient negligence on the part of the defendant or of proof of contributory negligence on the part of the deceased. This very much narrows down the positions of the defendant in this court on the propositions to which we will call attention.

[2] Complaint is made that the counsel for the plaintiff made certain statements in his argument to the jury which call for a new trial. While the statements were hardly to be approved, it is not clear that they were of a character which, at any rate, would afford ground for exception, while it is clear that whatever objections the defendant had were not followed up. There is nothing in the record on this point except merely that the defendant excepted, or to show that the matter was submitted to the court in any proper form, or that the court regarded the observations of counsel as harmful, while in ordinary cases like this it must appear that the trial court took some action, or was asked to take some. Crumpton v. U. S., 138 U. S. 361, 364, 11 Sup. Ct. 355, 34 L. Ed. 958; Toledo R. Co. v. Howe, 191 Fed. 776, 786, 112 C. C. A. 262; Devine v. Chicago, etc., R. Co., 194 Fed. 861, 114 C. C. A. 607.

Aside from what we have referred to, we do not find that there is any question presented in the record which requires our consideration except what arose as follows:

[3] It may have been that it was the duty of Tibbetts to have replaced the guard, so that it may have been that the accident was the result of his own negligence in not replacing it. It is also plain that, on the face of the case, Tibbetts walked into the dangers with his eyes open, and knowing fully what they were. Whatever doubt there may be of any presumed negligence in not replacing the guard, both that and the point of assumed risk were met by the evidence of one Moore, who testified that before the accident occurred he heard a conversation between Tibbetts and one Marshall, who appears to have been the defendant's "master mechanic," and as to whom it is not disputed that he had sufficient authority in the premises. The defendant discredits the entire testimony of Moore; but a motion to the trial judge for a new trial was made, among other reasons, on that account, and the motion was denied. In the federal practice the trial judge has especial authority with reference to new trials on account of mere matters of conflict of testimony. He hears the witness, and observes his manner, and can form an opinion with reference to his truthfulness, which no appellate tribunal can do. Therefore it would be an extreme case where a federal appellate tribunal would feel authorized, under such circumstances, to overrule a determination of the trial judge of the kind described.

Aside from that, the circumstances affecting the testimony of Moore are in no way of such a conclusive character that an appellate court could set aside the finding of a jury based thereon, even though it might think that if it held the place of the trial judge it would have done so. Therefore we must accept the testimony of Moore as given by him. He said that he heard a conversation between Tibbetts and Marshall a while before the accident occurred. He does not positively fix the length of the intervening period. "Well," he says, "it was only just a few days or so." He had previously said that it was the week before Tibbetts was killed. That was as well as he could locate it; and, in any event, his attempt to locate it was confused, so that it would be impossible for us to determine on this record how long before the accident the conversation occurred.

The conversation he reports as follows:

"Well, Tibbetts said that he should put his coat and hat on and go home if that guard was not put back there; and Dan [meaning Marshall] said: 'You keep your hat on. I will have that guard put right back there.'"

As reported by Moore, that was the end of the conversation. This went to the jury, and the jury found that the conversation as reported by Moore was correct. The only thing, further, we have in the record concerning the matter is an extract from the charge of the judge to the jury on this point, covering two full printed pages, and closing as follows:

"To these instructions the defendant duly and seasonably excepted."

It is not denied that the portion of the charge excepted to was correct so far as the general rules regarding the effect of the conversation between Marshall and Tibbetts is concerned. The court charged, although not so pointedly as it might have done, that it was for the jury

to determine whether the delay between the conversation and the accident was a reasonable or an unreasonable delay under the rules with reference to the effect of a notice of the need of repairs to obviate a dangerous condition of things. What the court said wound up as follows:

"If you find that this inducement was held out to him by the company or its agents, and you find it was a reasonable thing for him to go forward there as he did, and he was injured by reason of the defect, then he would be entitled to recover, and there would be no arbitrary rule of law which would hold him to an assumption of the risk."

[4] It will be noticed that in this charge there was no comment on the length of time that had elapsed, nor was the jury expressly directed even to ascertain what the length of time was, nor the details of the evidence brought to their attention to enable them to do so. The charge generally was correct; and the only point now brought to our attention is that it was insufficient on the proposition as to what the jury might or might not find to be a reasonable time under the rules. That this is one of the class of the cases where, in the federal practice, the determination of what is a reasonable time is ordinarily for the jury cannot be disputed; and if the defendant had desired more specific instructions, or to bring to the attention of the court or jury the question which it now seeks to bring to our attention, it should have been more specific; and so this general exception to two pages of a charge substantially correct cannot be availed of.

[5] Moreover, this was not an ordinary case; but, as the record stands, there was an absolute promise on the part of the defendant in engaging Tibbetts to remain at work, and in agreeing to safeguard the place in case he did. It must be accepted to be true that on this question there are many elements interposing as to what is a reasonable time, as, for example, where the hazard is imminent, a reasonable time would ordinarily be very short, while, as probably was the case here, if the hazard is not imminent, it would be naturally protracted; and while in a case like a repair which can be done in a few moments, a reasonable time would be very brief, in a case where a guard was to be supplied as apparently was the fact here, it might also again be protracted. Yet, further, where an employé is especially engaged to work, notwithstanding a particular defect, coupled with a promise that the defect will be remedied, the engagement relating thereto might well be supposed to stand as a protection to the employé until there was some express, or some otherwise specific, change in the relations of the parties. All such things are generally for the jury and not for the court, especially not for the appellate court.

Many topics were discussed at the bar; but we think that we have disposed of those which are essential, and, indeed, of all the propositions raised by the assignment of errors which were finally insisted on.

The judgment of the District Court is affirmed, with interest; and the defendant in error recovers her costs of appeal.