## ATLANTIC CORPORATION v. HARRIS.

(Circuit Court of Appeals, First Circuit. November 7, 1921.)

No. 1516.

1. **Master and servant &copy;=>287 (1)—Negligence in directing servant to operate dangerous machine alone held for jury.**

Where it was dangerous for a servant, operating a machine for reaming holes in plates in shipbuilding, to attempt to ream holes upward without a helper, the question whether the master was negligent in directing the servant to undertake such work pursuant to the master's custom until a helper could be sent *held* for the jury.

2. **Master and servant &copy;=>289 (27)—Contributory negligence in operating machine alone held for jury.**

Where servant and master knew that it was dangerous for the servant, operating a machine for reaming holes in plates in shipbuilding, to operate such machine in drilling holes upward, without a helper, and it was customary when that stage of the work was reached requiring a helper to request one, and continue work until one was sent, the questions whether the servant was negligent in continuing work alone, and whether he had so continued for more than a reasonable time when injured, *held* for the jury.

In Error to the District Court of the United States for the District of New Hampshire; Edgar Aldrich, Judge.

Action by William M. Harris against the Atlantic Corporation. Judgment for plaintiff, and defendant brings error. Affirmed.

Jonathan Piper, of Concord, N. H. (Streeter, Demond, Woodworth & Sulloway, of Concord, N. H., on the brief), for plaintiff in error.

Alexander Murchie, of Concord, N. H. (Murchie & Murchie, of Concord, N. H., on the brief), for defendant in error.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

BINGHAM, Circuit Judge. This is an action at common law to recover damages for personal injuries alleged to have been sustained by the plaintiff while engaged in the defendant's service by reason of its negligence. There was a trial by jury in the United States District Court for New Hampshire, and a verdict was rendered, upon which judgment was entered for the plaintiff. The case is here on writ of error, and the errors assigned are that the court erred in denying the defendant's motion for a directed verdict: (1) In that there was no evidence of the violation of any duty on the part of the defendant; (2) in that it conclusively appeared that the plaintiff assumed the risk of injury; and (3) in that it conclusively appeared that the plaintiff's own negligence contributed to cause his injury.

The evidence tended to prove that the defendant was engaged in building ships at Portsmouth, N. H.; that the plaintiff entered its employ in the month of August, 1919, and received his injury in the afternoon of February 13, 1920; that for the first three weeks he "bolted up"—that is, put bolts through holes in the ship's plates, pulling the plates together, preparatory to reaming; that for the balance of the

time he was engaged in reaming holes in the plates, and was so engaged at the time he was injured; that the machine he was using at the time was known as a "corner reamer," which was run by compressed air with a pressure of 100 pounds to the square inch, the air being supplied through a hose; that the machine was heavy, weighing about 30 pounds, and not only difficult, but dangerous, for one man to operate in reaming holes upwards; that the drill which the machine operated would catch at times, if a portion of the material being reamed chanced to be hard, or the drill varied in its alignment with the hole, but would not catch in every hole; that in reaming upwards two men were necessary to prevent a kick, should the drill catch in the hole; that one man could not prevent the kick; that on the day of the accident the plaintiff was using a corner reamer to ream holes up through the steel plates of a deck support or pillar of a steel ship, standing on a staging between the decks of the ship, the distance between the decks being about 8 feet and the staging being about 3½ to 4 feet high; that he was supporting the main part of the machine with his left hand, and grasping its handle, where the tube connected, with his right hand; that the drill caught in the hole, causing the machine to kick, and its handle to strike the plaintiff over the heart, causing the injury complained of; that prior to undertaking this particular overhead reaming, and just before finishing reaming downwards or horizontally (which latter class of work he could do alone), the plaintiff requested the boss in charge of the work to furnish a helper to assist in reaming the overhead plates, and was directed by the boss to go ahead with the work, with the assurance that a helper would be furnished right away; that he soon completed the work of reaming downwards or horizontally, and, having disconnected and reconnected the hose, placed the corner reamer upon the staging and began reaming upwards in the overhead plates, standing upon the platform; that when he had been thus engaged for a brief period the drill caught and the machine kicked, causing the injury complained of; that two methods prevailed in the defendant's plant for doing the work of reaming upwards—one was to have two men on the machine all the time; the other was to direct the employee to start in on the work alone, with an assurance or promise that a helper would be presently supplied, and for the employee to start in on the work, the helper being supplied shortly afterwards.

Previous to the accident the plaintiff had, at the direction of the boss, entered upon the work of reaming overhead alone, having first requested a helper, and been assured that a helper would be supplied, and such was the custom or method prevailing in the defendant's plant. He knew it was dangerous to ream overhead without a helper, and had always been supplied with one by the boss, as had the other reamers, either before entering upon the work or soon after. The plaintiff received his injury after he had been at work about six minutes, and before he had finished the first hole and a helper had been furnished.

The danger that the machine would kick without warning and the necessity of a helper in reaming upwards were facts well known, both to the plaintiff and the defendant.

[1] As it was customary in the defendant's plant for the boss to set the men at work reaming upwards without a helper, promising that one would be shortly supplied, and as it could not be known when a kick would occur in the prosecution of such work, there was evidence from which reasonable men might find that the defendant had provided a method of doing this work that was not reasonably suitable, and that it was negligent in directing it to be done in this manner. This method of doing the work was known to the defendant, or at least the jury could find from the evidence that it knew of it and sanctioned it.

[2] It is further contended by the defendant that, inasmuch as the plaintiff knew of the dangers of reaming upwards without a helper, he was guilty of contributory negligence in entering upon the work before a helper was provided, and also assumed the risk.

The plaintiff, on the other hand, says that, under the decisions of this circuit and of the Supreme Court, a servant may properly enter upon the performance of work known to be dangerous because of a deficiency in the instrumentalities furnished or a lack of a sufficient number of workmen, in reliance upon the master's promise to supply the deficiency, and may continue at the work for a reasonable time, without assuming the risk of injury from such deficiency, and without being guilty of contributory negligence, provided the risk is not so imminent that no reasonable man would enter upon or continue in the work.

There is no claim that the machine was defective, or that the plaintiff, after he entered upon the particular work, was careless in his method of operating the machine. The claim is that he was negligent in undertaking to operate the machine at all without a helper, notwithstanding the custom prevailing in the defendant's plant of setting men at work reaming upwards without a helper, and in reliance upon a promise that one would be shortly furnished.

Neither is there any question here as to whether the interval of time during which the plaintiff was engaged in the particular work of reaming upwards without a helper before he received his injury was or was not reasonable. That question was clearly one for the jury, and was submitted to them by the trial judge under instructions to which no exception was taken.

In Odell Mfg. Co. v. Tibbetts, 212 Fed. 652, 129 C. C. A. 188, decided by this court March 12, 1914, it appeared that the defendant was negligent, in that it failed to have a guard in place to protect its employees against the risk of injury from certain dangerous machinery, and that the accident in question would not have happened had it been in place. A few days before the accident the plaintiff notified the defendant's master mechanic that he would cease work if the guard was not put back, and the master mechanic said to him: "You keep your hat on. I will have that guard put right back there." The court in its opinion regarded the statement of the master mechanic as "an absolute promise on the part of the defendant in engaging Tibbetts [the plaintiff] to remain at work, and in agreeing to safeguard the place in case he did." In that case, notwithstanding it appeared that the plaintiff knew full well what the dangers were because of the absence of the guard, the jury were instructed:

"If you find that this inducement was held out to him by the company or its agents, and you find it was a reasonable thing for him to go forward there as he did, and he was injured by reason of the defect, then he would be entitled to recover, and there would be no arbitrary rule of law which would hold him to an assumption of the risk"

—and the instruction was held to be correct.

In Seaboard Air Line Ry. v. Horton, 239 U. S. 595, 36 Sup. Ct. 180, 60 L. Ed. 458, the plaintiff, an engineer, was injured through an explosion of a water gauge on his engine. In order to protect him from injury in case of the bursting of the gauge, a thick piece of plain glass, known as a guard-glass, should have been in position in slots arranged for the purpose in front of the gauge. When the plaintiff took charge of the engine he noticed that the glass-guard was missing and reported it to the foreman of the round house, and asked him for a new one. The foreman replied that he had none, but would send for one, and that the plaintiff in the meantime should run the engine without it. He did so for a time, and until the explosion of the water gauge, causing the injury complained of. In that case the defendants, as here, claimed that upon all the evidence the plaintiff, as a matter of law, assumed the risk of injury from the absence of the guard glass. Its contention stated more specifically was:

"That although plaintiff reported the absence of the guard glass to defendant's foreman, and received a promise of repair, yet the danger was so imminent that no ordinarily prudent man under the circumstances would have relied upon the promise, and hence plaintiff, as matter of law, assumed the risk of injury."

It was also insisted in that case that the plaintiff was guilty of contributory negligence as a matter of law. This contention, like that in regard to assumed risk, was based upon the ground of the obvious and imminent nature of the danger to the plaintiff arising out of the absence of the guard glass; but it was held that reasonable reliance of an employee upon the employer's promise to repair a defect was as good an answer to the charge of contributory negligence as to the contention that he assumed the risk, and that as to both matters the question was whether it could be said, as a matter of law, that the danger was so imminent that no ordinarily prudent man, under the circumstances, would continue in the employment in reliance upon the promise; that—

"To relieve the employer from responsibility for injuries that may befall the employee, while remaining at his work in reliance upon a promise of reparation there must be something more than knowledge by the employee that danger confronts him, or that it is constant. The danger must be imminent—immediately threatening—so as to render it clearly imprudent for him to confront it, even in the line of duty, pending the promise."

We do not think it can be said, as a matter of law, that the danger encountered by the plaintiff was so imminent that no ordinarily prudent man, under the circumstances, would undertake the work for a brief period in reliance upon the promise. To do so would in effect necessitate our saying that the established custom and practice of the defendant in directing its employees to undertake such work for a brief length of time was such reckless disregard of human safety that no

employer would think of maintaining such a course of business. This method of doing the work was not only invoked by the defendant with reference to the plaintiff, but with reference to its other reamers, who, no doubt, were as much aware of the dangers attending it as the plaintiff, and who, notwithstanding this knowledge, were accustomed to enter upon the work in the manner the plaintiff did. The plaintiff, also, at previous times, in pursuance of the custom, entered upon this class of work without a helper and without sustaining any injury, and it would be going far for us to say that, under the circumstances, no reasonable man would do as the plaintiff did. The question is rather one of fact for the jury, and this question, as a question of fact, was submitted to the jury, and no exception was taken.

The judgment of the District Court is affirmed, with costs to the defendant in error.